IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-345

 No. COA21-4

 Filed 20 July 2021

 Currituck County, No. 19 JA 34

 IN THE MATTER OF N.Z.B.

 Appeal by Respondent-Mother from order entered 16 October 2020 by Judge

 Eula E. Reid in Currituck County District Court. Heard in the Court of Appeals 12

 May 2021.

 The Twiford Law Firm, PC, by Courtney S. Hull, for Currituck County
 Department of Social Services.

 Matthew D. Wunsche, for the Guardian ad Litem.

 Annick I. Lenoir-Peek, for Respondent-Mother.

 No brief filed on behalf of Respondent-Father.

 WOOD, Judge.

¶1 Respondent-Mother appeals a permanency planning order granting

 guardianship of the minor child to his paternal grandmother. On appeal,

 Respondent-Mother contends the trial court erred in finding she forfeited her

 constitutionally protected parental status. Respondent-Mother further contends the

 trial court lacked subject matter jurisdiction under the Uniform Child Custody
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

 Jurisdiction Enforcement Act (“UCCJEA”). After careful review, we deny Currituck

 County Department of Social Services’ (“Currituck County DSS”) motion to

 supplement the record on appeal; deny Respondent-Mother’s motion to strike

 Currituck County DSS’s appellee brief and proposed supplement to the record on

 appeal; vacate the order of the trial court; and remand for further proceedings.

 I. Factual and Procedural Background

¶2 Respondent-Mother has four children. O.D. was born on June 13, 2001; C.B.

 was born on January 4, 2003; Noah1 was born on May 12, 2005; and A.B., whose

 birthdate is not included in the record on appeal. 2

¶3 In 2002, the Pasquotank County, North Carolina, Department of Social

 Services (“Pasquotank County DSS”) conducted a child protective services

 investigation, “which yielded a substantiation of neglect, improper care, and injurious

 environment in regard to [Respondent-Mother’s] oldest child, [O.D.]” Thereafter,

 O.D. resided with her maternal grandparents. In 2004, the Dare County, North

 Carolina, Department of Social Services (“Dare County DSS”) accepted a report

 alleging Respondent-Mother neglected C.B. The report alleged Respondent-Mother

 left C.B. “in the care of a man who had been beaten with a metal pipe, [C.B.] witnessed

 1 See N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the
 juveniles).
 2 O.D., C.B., and A.B. are not subject to this appeal. O.D. and C.B. have reached the

 age of majority, and A.B. remains in Respondent-Mother’s care.
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

 the assault, was covered in the blood of this man, and left alone without a caregiver.”

 Subsequently, custody of O.D. and C.B. was awarded to their maternal grandparents

 on November 12, 2004.

¶4 On May 12, 2005, Respondent-Mother gave birth to Noah. In October 2005,

 Currituck County DSS “substantiated medical neglect regarding [Noah] for missing

 five medical appointments. The case was transferred to the Pasquotank County

 Department of Social Services and closed on February 9, 2006.”

¶5 On July 19, 2006, Dare County DSS filed a petition to terminate Respondent-

 Mother’s rights with respect to O.D. and C.B. On November 29, 2006, Currituck

 County DSS “substantiated a finding of neglect regarding [Noah]. [Respondent-

 Mother] was holding [Noah], who was an infant at the time, during a physical

 altercation with another individual.” On September 21, 2006, the Dare County

 District Court terminated Respondent-Mother’s parental rights with respect to O.D.

 and C.B.

¶6 While the juvenile proceeding concerning O.D. and C.B. was ongoing,

 Respondent-Mother moved several times. Respondent-Mother moved from Dare

 County to Currituck County, before relocating to James City County, Virginia. On

 May 4, 2007, the James City County Division of Social Services (“James City County

 DSS”) filed an “[e]mergency [r]emoval [o]rder after a CPS report was received from

 Avalon shelter staff alleging that [Respondent-Mother] had left [Noah] unsupervised
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

 on a number of occasions.” Thereafter, James City County DSS was granted custody

 of Noah. Ultimately, Mr. and Mrs. Z, relatives of Respondent-Mother, were granted

 custody of Noah in November 2008. Noah resided with Mr. and Mrs. Z in Point

 Harbor, North Carolina. Respondent-Mother continued to reside in Williamsburg,

 Virginia. In October 2019, Mrs. Z died. On October 19, 2019, Respondent-Mother

 petitioned the James City County Juvenile and Domestic Relations District Court

 (the “James City Court”) for custody of Noah.

¶7 In December 2019, approximately two months after Mrs. Z’s death, Mr. Z

 contacted Currituck County DSS. Mr. Z disclosed he could no longer provide for Noah

 due to Noah’s behavior after Mrs. Z’s death and Noah’s contact with Respondent-

 Mother. Mr. Z expressed his concern for Noah’s well-being and whether Respondent-

 Mother would be able to provide adequate care for him.

¶8 Currituck County DSS filed a juvenile petition alleging Noah was a dependent

 juvenile on December 20, 2019. That same day, Noah was placed with his paternal

 grandmother (“Mrs. S”). On December 30, 2019, a non-secure custody hearing was

 held. Respondent-Mother was present and requested custody of Noah.

¶9 The Currituck County District Court (the “Currituck Court”) reviewed the file

 and exercised temporary emergency jurisdiction. The trial court continued custody

 with DSS, allowed Noah to remain with Mrs. S, and granted Respondent-Mother

 supervised visitation of two-hours per week. Currituck County DSS filed a “Motion
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

 to Determine Subject Matter Jurisdiction” on January 3, 2020. The Currituck Court

 entered an “Order on Jurisdiction” on January 7, 2020, finding Virginia had

 relinquished jurisdiction under the UCCJEA. 3

¶ 10 On March 6, 2020, the adjudication and disposition hearing occurred. On

 March 16, 2020, the James City Court dismissed Respondent-Mother’s petitions for

 custody because the petitions were “improperly filed. The proper filing would have

 been a [motion to amend].” The Currituck Court entered an order adjudicating Noah

 dependent on June 3, 2020.

¶ 11 In the adjudication and disposition order, the trial court made several findings

 about Respondent-Mother’s history with North Carolina’s child protective services

 and Virginia’s child protective services. At disposition, Respondent-Mother was

 ordered to complete her “Out of Home Services Plan,” which included completion of

 an online parenting course; cooperation with James City County DSS on the

 Interstate Compact on the Placement of Children (“ICPC”) home study request;

 visitation; investigation of in-person parent resources; and payment of child support.

¶ 12 In March 2020, shortly after the adjudication and disposition hearing, COVID-

 19 restrictions were implemented. An in-person parenting class was cancelled, and

 Respondent-Mother’s in-person visitations were suspended. Respondent-Mother

 3 Both North Carolina and Virginia have adopted the UCCJEA. See N.C. Gen. Stat. §

 50A-101 et seq. and Va. Code Ann. § 20-146.1 et seq.
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

 began her ICPC home study, but James City County DSS could not approve

 Respondent-Mother’s home as a placement for Noah because she had not completed

 the necessary paperwork for a home study.

¶ 13 On August 11, 2020, a tree fell on Respondent-Mother’s residence during a

 storm related to Hurricane Isaias, injuring Respondent-Mother’s fiancé. Respondent-

 Mother’s home was destroyed and later condemned. Respondent-Mother, her fiancé,

 and Respondent-Mother’s youngest child, A.B., moved into temporary housing paid

 for by the American Red Cross. The James City County Housing Authority was

 aiding Respondent-Mother in finding alternative housing.

¶ 14 On August 18, 2020, Respondent-Mother attempted to complete the

 outstanding paperwork for James City County DSS to perform a home study.

 Respondent-Mother and her fiancé “were asked to bring their driver’s license, social

 security card, birth certificate[,] and rabies vaccination for their pets. They only

 provided their driver’s license and reported that they were not able to bring copies of

 the other documents[.]” Due to the outstanding paperwork and Respondent-Mother’s

 housing situation, James City County DSS was unable to complete the ICPC home

 study.

¶ 15 A permanency planning hearing occurred on September 4, 2020. The

 Currituck Court found

 91. The Court finds that [Respondent-Mother] has acted
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

 inconsistently with her constitutionally protected right to
 parent [Noah] in that: the child was previously adjudicated
 in Virginia to be a neglected child due to her actions; she
 failed to make sufficient progress in her case plan; and on
 this date, the Court found, pursuant to North Carolina
 General Statute §7B-906.1(d)(3), that efforts for
 reunification with [Respondent-Mother] would clearly be
 futile or would be inconsistent with the child’s health and
 safety, and need for a safe, permanent home within a
 reasonable period of time [] and that efforts for
 reunification as defined in North Carolina General Statute
 §7B-101 shall no longer be required.

 The trial court concluded Respondent-Mother was “not a fit or proper person for the

 care, custody and control of [Noah],” and had “acted in ways that [were] inconsistent

 with her constitutionally protected status as a parent.” The court awarded

 guardianship to Noah’s paternal grandmother, Mrs. S. Respondent-Mother filed her

 notice of appeal on October 16, 2020.4

 II. Discussion

¶ 16 Respondent-Mother contends the trial court erred in finding she acted

 inconsistently with her constitutionally protected parental status because the finding

 was not supported by clear, cogent, and convincing evidence. Respondent-Mother

 further argues the trial court erred in finding she had acted inconsistently with her

 constitutionally protected status because there was evidence to the contrary “and []

 4 Currituck County DSS moved to amend and supplement the record on appeal on

 March 8, 2021. In our discretion, we deny Currituck County DSS’s motion.
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

 some of the trial court’s findings [] would indicate the opposite conclusion.”

 Respondent-Mother also contests the district court’s subject matter jurisdiction to

 adjudicate Noah as a dependent juvenile when the James City Court did not formally

 relinquish jurisdiction.

¶ 17 After careful review, we vacate the order of the trial court due to the failure to

 apply the correct evidentiary standard in finding Respondent-Mother acted

 inconsistently with her constitutionally protected parental status. As we vacate the

 order of the trial court, we do not reach the merits of Respondent-Mother’s other

 arguments on appeal.

¶ 18 We review the determination of whether parental conduct is inconsistent with

 the parent’s constitutionally protected status de novo. In re D.A., 258 N.C. App. 247,

 249, 811 S.E.2d 729, 731 (2018). “A parent has an interest in the companionship,

 custody, care, and control of his or her children that is protected by the United States

 Constitution.” Boseman v. Jarrell, 364 N.C. 537, 549, 704 S.E.2d 494, 502 (2010)

 (alterations, quotation marks, and citation omitted). “So long as a parent has this

 paramount interest in the custody of his or her children, a custody dispute with a

 nonparent regarding those children may not be determined by the application of the

 best interest . . . standard.” Id. at 549, 704 S.E.2d at 503 (citation and quotation

 marks omitted). However, a parent can forfeit their right to custody of their child by

 unfitness or acting inconsistently with their constitutionally protected status. Id.
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

¶ 19 A determination that a parent has forfeited this status must be based on clear

 and convincing evidence. In re D.A., 258 N.C. App. at 249, 811 S.E.2d at 731;

 Weideman v. Shelton, 247 N.C. App. 875, 880, 787 S.E.2d 412, 417 (2016). The trial

 court must clearly address whether the parent is unfit or if their conduct has been

 inconsistent with their constitutionally protected status as a parent, where the trial

 court considers granting custody or guardianship to a nonparent. In re B.G., 197 N.C.

 App. 570, 574, 677 S.E.2d 549, 552 (2009); In re J.L., 264 N.C. App. 408, 419, 826 S.E.

 258, 266 (2019). “[T]he trial court must be clear that it is applying the ‘clear, cogent,

 and convincing’ standard” when it determines a parent has acted inconsistently with

 their paramount right to parent their children. Moriggia v. Castelo, 256 N.C. App.

 34, 43, 805 S.E.2d 378, 383 (2017).

¶ 20 “ ‘[T]here is no bright line beyond which a parent’s conduct’ amounts to action

 inconsistent with the parent’s constitutionally protected paramount status.” In re

 A.C., 247 N.C. App. 528, 536, 786 S.E.2d 728, 735 (2016) (quoting Boseman, 364 N.C.

 at 549, 704 S.E.2d at 503). Determining whether a parent has forfeited their

 constitutionally protected status is a fact specific inquiry. Id. (citations omitted). In

 making such a determination, the trial “court must consider ‘both the legal parent’s

 conduct and his or her intentions’ vis-à-vis the child.” Id. (quoting Estroff v.

 Chatterjee, 190 N.C. App. 61, 70, 660 S.E.2d 73, 78 (2008)).

¶ 21 Here, the trial court found
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

 91. [T]hat [Respondent-Mother] has acted inconsistently
 with her constitutionally protected right to parent [Noah]
 in that: the child was previously adjudicated in Virginia to
 be a neglected child due to her actions; she failed to make
 sufficient progress in her case plan; and on this date, the
 Court found, pursuant to North Carolina General Statute
 §7B-906.1(d)(3), that efforts for reunification with
 [Respondent-Mother] would clearly be futile or would be
 inconsistent with the child’s health and safety, and need
 for a safe, permanent home within a reasonable period of
 time [] and that efforts for reunification as defined in North
 Carolina General Statute §7B-101 shall no longer be
 required.

 However, the trial court’s written order does not state that it applied the clear and

 convincing evidence standard to its finding that Respondent-Mother acted

 inconsistently with her constitutionally protected parental status; nor did the trial

 court state what standard it used in open court. Where the trial court fails to state

 the standard of proof applied in its decision, the case must be remanded. In re J.L.,

 264 N.C. App. at 419-20, 826 S.E.2d at 266-67. Accordingly, we vacate and remand

 for the application of the clear and convincing standard.

¶ 22 Respondent-Mother further contends the Currituck Court lacked subject

 matter jurisdiction to enter an adjudication, disposition, and review and permanency

 planning order when it failed to follow the procedure set out in the UCCJEA for

 obtaining jurisdiction. As we vacate the trial court’s order, we need not address

 Respondent-Mother’s other arguments on appeal. On remand, however, the trial

 court should make findings addressing its exercise of jurisdiction under the UCCJEA.
 IN THE MATTER OF N.Z.B.

 2021-NCCOA-345

 Opinion of the Court

 III. Conclusion

¶ 23 The trial court’s order fails to indicate that it applied the clear and convincing

 evidence standard in determining Respondent-Mother acted inconsistently with her

 constitutionally protected status as a parent. Therefore, we vacate the order of the

 trial court and remand this matter for the application of the clear and convincing

 standard and for appropriate findings regarding the Currituck Court’s jurisdiction

 under the UCCJEA.

 VACATED AND REMANDED.

 Judges TYSON and HAMPSON concur.